IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JEFFREY DEACON<br>2597 Schufkraft Rd.<br>Quakertown, PA 18951 | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA[1]<br>1401 JFK Blvd, MSB 13th Fl<br>Philadelphia, PA 19102<br>       and<br>MATTHEW GILLESPIE, individually<br>       and<br>MICHAEL GOODSON, individually | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Jeffrey Deacon, (*hereinafter* referred to as "Plaintiff" unless otherwise indicated), by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Plaintiff against the City of Philadelphia, Matthew Gillespie and Michael Goodson (hereinafter referred to collectively as "Defendants") for *both state and federal statutory claims* for violations of 42 U.S.C. § 1983 (First Amendment retaliation) and the Pennsylvania Whistleblower Act ("PWA"- 43 P.S. §§ 1421-1431, *et. seq.*) (retaliation). Plaintiff asserts that Defendants have and continue to retaliate against him for complaining and reporting issues about public affairs, including illegal practices, departmental illegality, and

---

[1] Addresses for the remaining-captioned Defendants are omitted herein for special efficiency, as they may individually or collectively be served at the same address as Defendant City of Philadelphia.

1

unethical actions within the Philadelphia Police Department. *This lawsuit has been necessitated because Plaintiff has been unable to obtain due process based upon corruption within the Philadelphia Police Department* (an entity within Defendant City of Philadelphia).

**JURISDICTION AND VENUE**

2.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

3.     The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein.

4.     Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**PARTIES**

5.     The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

6.     Plaintiff is an adult individual residing at the above-captioned address.

7.     The City of Philadelphia (hereinafter "Defendant City" where referred to

2

individually) is a legally recognized municipality in Pennsylvania located in this judicial district.

8.      Defendant operates the Philadelphia Police Department (hereinafter "PPD"), which is a police department that operates across several district locations throughout the City of Philadelphia, and employs at least one hundred (100) employees.

9.      Matthew Gillespie (hereinafter "Defendant Gillespie" where referred to individually) is one of the current Chief Inspectors for PPD but formerly held the role of Inspector.

10.     Michael Goodson (hereinafter "Defendant Goodson" where referred to individually) is one of the current Inspectors for PPD but formerly held the role of Captain for the 22nd District.

11.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12.     The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

### (A)  History and Background

13.     Plaintiff was hired by PPD, a department of Defendant City, effective on or about February 22, 2010.

14.     Plaintiff graduated from the Philadelphia Police Academy on or about October 8, 2010 and has acted as an outstanding officer since his graduation.

15.     From 2010 through the present, or a period of approximately sixteen (16) years, Plaintiff has been employed with Defendant City in various positions within PPD including

Sergeant, Lieutenant, and Lieutenant Administrator; and has been used in a variety of capacities throughout his very successful tenure (discussed further *infra*).

16.    Beginning in December 2021, Plaintiff began working for PPD's 22nd District.

17.    The 22nd District for PPD serves a large portion of North Philadelphia and is notoriously known for assisting areas that have one of the highest violent crime and shooting rates in the entire United States.

18.    The 22nd District is also publicly known for internal corruption, leading to investigations of several officers within PPD, and even by outside law enforcement (or other agencies).

19.    By way of example only, the 22nd District is publicly known for having officers involved in several scandals involving quarrelling between employees[2] and theft of time/money via publicly funded grant money[3].

> **(B)    The background of corruption in Defendant City/ the PPD's 22nd District is of critical importance in this case and is outlined in this lawsuit because: (1) it relates to concerns expressed by Plaintiff of illegality (underlying his instant lawsuit); (2) it directly underscores why Plaintiff continues to be retaliated against; and (3) it shows why recent Internal Affairs Bureau ("IAB") investigations and discipline against Plaintiff have been falsely affirmed without meaningful due process.**

20.    Due to the previous history of the 22nd District's illegal activities, once moved into the 22nd District in December 2021, Plaintiff was placed on high alert that he was to report any instances of officer misconduct or wrongdoings, specifically due to Defendants "Duty to Intervene,

---

[2] "Quarrelling" within PPD refers to unprofessional, disruptive or hostile arguments between employees.

[3] Plaintiff brings up the history of the 22nd District, as it is extremely relevant to Plaintiff's protected complaints and the basis for why he was retaliated against. There are several public news articles widely available about the deception and fraud perpetuated by the 22nd District. *See* https://www.cbsnews.com/philadelphia/news/9-current-former-philadelphia-officers-charged-guns-down-gloves-up-case/; https://www.inquirer.com/news/krasner-nashid-akil-boxing-antiviolence-grant-church-theft-20251117.html.

To Prevent Police Misconduct, Unethical Behavior, or Mistakes – Active Bystandership or Law Enforcement ("ABLE") directive[4], imposed in June of 2021 by PPD.

21.    Defendants' ABLE directive states in relevant part,

"In order to protect and preserve the honor and integrity of the Philadelphia Police Department, the Department shall pursue a holistic approach incorporating all aspects of prevention, education, intervention, and investigation to eradicate official misconduct, the appearance of improprieties, unethical behavior and mistakes by members of the Department.

EMPLOYEE'S DUTY TO REPORT MISCONDUCT AND/OR UNETHICAL POLICE BEHAVIOR

A. All personnel have the right and duty to file complaints of corruption, misconduct, unethical police behavior, and mistakes made by other employees or other conditions that negatively impact the Department by any employee of the Police Department.

B. Reprisals against any member of the Department, who reports corruption, misconduct, unethical police behavior, mistakes or other conditions that negatively impact the Department are strictly prohibited…

D. The right and duty to come forward will not be used to initiate groundless complaints or maliciously slander another member of the Department.

E. **Failing to intervene whenever possible to prevent or stop misconduct, unethical behavior or a mistake from occurring or failing to report such actions will also be investigated by the Office of Professional Responsibility**."

22.    Plaintiff was under the impression that Defendants' ABLE directive was of detrimental importance to PPD given that PPD required every individual, including Defendant Gillespie and Defendant Goodson, to attend a specialized training on ABLE.

23.    Despite Defendants' direct objective for Plaintiff to report any instances of misconduct or illegal behavior, Defendants perpetuated a work environment that, upon every instance of misconduct Plaintiff observed and attempted to report (including by his own

---

[4] This refers specifically to Directive 8.10.

supervisors), he was shortly thereafter retaliated against in an effort to make a paper trail to dissuade Plaintiff through discipline or ultimately to force Plaintiff's termination.

24.     In terms of structure or hierarchy, and during the relevant time frame, Plaintiff reported directly to Goodson, during which time Goodson served as the Captain of the 22nd District.

25.     Goodson's supervisor was first Raymond Evers ("Evers") – Inspector, who was then later replaced by Gillespie, during which time he served as Inspector of the Central Police Division, covering the 22nd District (discussed further *infra*).

26.     During a portion of Plaintiff's time in the 22nd District (discussed further *infra*), he served as the Lieutenant Administrator for the 22nd District; wherein he served as a de facto Captain for the 22nd District (a more senior role) when the Captain was not available to assist. Upon information and belief, only highly experienced and qualified lieutenants can serve in this role, and Lieutenant Administrators receive higher compensation, due to increased overtime worked.

### (C) **Defendants Have Continuously Perpetuated An Environment That Retaliates Against Plaintiff For Making Good Faith Complaints[5].**

27.     Over the course of the previous two (2) years, and despite the 22nd District's blatant and public wrongdoings, Goodson continued the 22nd District's culture by, upon information and belief, getting paid via grant money while not actually working, quarrelling with other employees, and allowing other employees to do the same.

28.     On or about February 14, 2024, Plaintiff informed Goodson that he had been receiving complaints that his aide was quarrelling on duty and engaging in department illegality.

---

[5] Plaintiff includes reference to acts of retaliation spanning beyond the SOL, but includes them for context only, as they are directly related to retaliation that continues to happen to Plaintiff to the present day.

29.	Just days later, in direct retaliation for receiving the complaints, Goodson demoted Plaintiff from the Lieutenant Administrator position, and switched Plaintiff to the overnight shift, in which Plaintiff's compensation significantly decreased. This order for demotion was then later overturned by Inspector Evers due to Goodson's blatant and acknowledged retaliation.

30.	Shortly thereafter, Plaintiff reported to Goodson and Defendants' IAB that he uncovered illegal practices, departmental illegality, and unethical actions by Brian Waters ("Waters") – Lieutenant as Waters was stealing time by paying himself and other employees for hours when they were not at work. This is fraud, abuse, and waste.

31.	Specifically, Plaintiff reported to Goodson/IAB in relevant part:

> "Good afternoon Sir's I am writing this email due to being approached by a whistleblower within the 22nd District. It is my responsibility to document and forward any potential misconduct within our ranks ..."

32.	Given Defendants' own directive to report any instances of misconduct, Plaintiff was extra diligent in making any good faith complaints of illegal practices, departmental illegality, and unethical actions he witnessed within PPD. Further, **Defendants' previous Administrative Lieutenant was disciplined and removed from the building for not properly reporting instances of misconduct within PPD; and thus, Plaintiff made it a priority in his role to be diligent in his reports. Unfortunately, police misconduct was ongoing and rampant.**

33.	On February 22, 2024, due to the blatant retaliation Plaintiff continued to experience, he submitted a complaint to Goodson, Inspector Evers and Winton Singeltary ("Singletary") – Chief Inspector; and also, Inspector Evers' boss. Plaintiff specifically stated that he felt he was being "retaliated" against due to his good faith (and mandated) complaints of illegality. Instead of meaningfully listening to him in any way, Defendants chose to ignore

Plaintiff's complaints about PPD's illegal and unethical actions; and continued retaliating against him.

34.    It was clear that Defendants then chose to embark on a campaign of attempting to rid PPD of Plaintiff; so much so that just days after Plaintiff complained of retaliation, he was informed that Goodson and Singletary were telling other PPD employees to "be aware" of Plaintiff and "watch their backs" as Plaintiff was somehow "out to get" PPD employees.

35.    Goodson further began **publicly** mocking and ridiculing Plaintiff and was telling PPD employees that he was not performing his duties properly, defamatory comments that were simply untrue and known to Goodson as maliciously false.

36.    On or about March 21, 2024, Plaintiff then submitted a complaint to IAB and Goodson that Waters continued to pay himself and other employees using "Code 64" grant money, when they in fact were not working. Plaintiff believed that Waters' actions were of detrimental importance to report to Defendants, as Waters and other employees of PPD were falsifying investigations they were conducting of the public in an effort to bolster their time worked. In Plaintiff's view, this was also criminal conduct (not just illegal or waste).

37.    On or about March 27, 2024, just days after Plaintiff's most recent complaint, and in retaliation for again reporting misconduct and illegal behavior by the 22nd District, Goodson for the second time removed Plaintiff from the Lieutenant Administrator position; *and placed Waters in the Lieutenant Administrator position*.

38.    The day after Plaintiff's demotion, Plaintiff was then informed that Goodson continued to demean and publicly mock Plaintiff to subordinates and superiors of Plaintiff and was telling other members of the PPD that Plaintiff "cannot be trusted," referencing Plaintiff's inability

8

to allow Goodson to perpetuate an environment of illegality and unethical behavior, and further that Plaintiff was "ratting out" officers on a regular basis to IAB.

39.     In or around April 2024, Inspector Evers was then transferred from his position and replaced by Gillespie.

40.     It is widely known that Gillespie is good friends with Waters and that they have had a working relationship for several years.

41.     Despite that Plaintiff's complaints to IAB were required to be kept confidential, upon Gillespie's transfer into the 22nd District, it became known that Gillespie immediately had a bad perception of Plaintiff from Goodson and that Gillespie himself had actually seen Plaintiff's complaints he had submitted to IAB and elsewhere in his desk on his first day working in the 22nd District.[6]

42.     As soon as Gillespie was transferred into the 22nd District, it became clear that he was intent on retaliating against Plaintiff with Goodson and they were attempting to force his termination.

43.     On or about May 28, 2024, as Goodson continued to retaliate against Plaintiff by submitting false allegations of Plaintiff from *years* prior, Plaintiff submitted a twelve (12) page formal EEO complaint outlining the history of retaliation he had faced and further questioned why his previous good faith complaints on illegal practices, departmental illegality, and unethical actions within PPD were not investigated, including why Goodson had not taken any action.

44.     Defendants again ignored Plaintiff's repeated complaints and thus allowed the blatant retaliation to continue.

---

[6] During a later internal PPD hearing for Plaintiff, Gillespie himself testified that he found Plaintiff's IAB complaints "sitting in his desk drawer" on the day he started as the Inspector.

**(D) <u>Defendants Continue to Retaliate Against Plaintiff for Making Protected Complaints.</u>**

45.    In or around the Fall of 2024, Gillespie applied for a promotion but was instead passed over. Upon information and belief, Gillespie believed he was passed over for promotion due to Plaintiff's complaints about him.

46.    Thus, on or about March 27, 2025, in retaliation for complaining about Defendants, Gillespie opened an investigation into Plaintiff for allegations having to do with "lying," and Plaintiff was ultimately found "guilty" and received a fifteen (15) day suspension due to Gillespie and Goodson's blatantly false allegations.

47.    A lying charge is of particular seriousness to a police officer, because if an officer is found internally "guilty" of two (2) lying charges, they are automatically terminated, receive permanent loss of law enforcement certifications, and in most instances, are never able to work in law enforcement again. Thus, Plaintiff was being targeted with the most harmful types of allegations to tank his career.

48.    Again, in retaliation for Plaintiff's repeated complaints, in or around April 2025, Plaintiff's Police Service Area ("PSA") was then changed by Defendants without prior notification. Plaintiff's PSA change would later be used against him in his annual review by Goodson and Gillespie as they would allege Plaintiff "failed to control" his PSA, despite Plaintiff receiving no prior notice and having no ramp-up period before the PSA changed.

49.    As a result of the sudden PSA change, Plaintiff complained to Goodson on or about April 29, 2025, about the sudden PSA change; to which Goodson ignored him.

50.    Throughout the course of the next several months, and due to Defendants' increased retaliation against him, Plaintiff submitted formal EEO Complaints to Defendants outlining the

retaliation he had been facing by Goodson and Gillespie on four (4) additional separate occasions, including April 28, 2025; April 30, 2025; May 20, 2025; and July 11, 2025.

51.    Despite Plaintiff's repeated complaints, he continued to be retaliated against. On September 12, 2025, and in an attempt to force a termination of Plaintiff, Plaintiff was again accused of allegations that happened ***seven (7) months prior.***[7]

52.    On March 4, 2026, as Plaintiff had continued to be retaliated against, Plaintiff complained to Defendants about the continued retaliation he was facing and, more importantly, the corruption he had been witnessing occurring in the 22nd District. In relevant part, Plaintiff stated:

> "Thank you for the fast response. I wanted to reach out to you in reference to the PBI with updated information that I feel needs to be noted by OPR/IAD[8].
>
> On 2/19/2026 I had my PBI..[9] This PBI was in reference to ***the letter I had written to OPR/IAD concerning corrupt behavior*** which ultimately became an investigation against me by then Insp. Gillespie. This was the primary basis for my complaint and interview with Lt. Hanton in the summer. For the sake of time I assume you are well versed in the matter since it is your case.
>
> I am writing you due to details that emerged during testimony during the PBI. C/I Gillespie gave testimony that the memo I wrote to OPR/IAD was "found in his desk drawer" when he took over command of Central Division. I had previously thought OPR/IAD made it district level but according toC/I Gillespie he found this random document, authored by me, sitting in a drawer. He testified he didn't know how it got there. He testified he asked Insp. Evers and was told by Insp Evers did not recall how it got there. He continued to testify that he called OPR/IAD about the found memo and was told there was no control number assigned to this matter and OPR/IAD knew nothing about it. Here is my biggest concern; C/I Gillespie testified he could not recall the name of the person he spoke to for this information. He also cannot recall when he originally started looking into the document but if I heard him correctly it sounded like it was around April of 2024. I interviewed with Sgt. Shamal Bryant around April of 2024 in reference to the email I sent to OPR/IAD

---

[7] This hearing was conducted on February 19, 2026, and despite the lack of evidence, and based largely on the testimony of Goodson and Gillespie alone, found Plaintiff 'guilty.'

[8] This refers to Defendants' IAB division.

[9] This PBI references Plaintiff's internal hearing from which he was found guilty on February 19, 2026.

reporting the corruption. Can you help explain to me how I can be interviewed by Sgt Bryant without a control number? Can I be interviewed on a job OPR/IAD was not handling? Why would it not be handled to begin with?

Now on to my biggest concern. The email I wrote to OPR/IAD about the corruption. Capt. Goodson testified to multiple statements both in the investigation and during the PBI that he doe snot recall ever seeing this email and that he saw the corruption memo for the first-time during Insp Gillespie's investigation. By Capt. Goodson making these statements he is clearly implying that the listed recipients of OPR/IAD are the people who leaked a document out of internal affairs. Based on documentsI have collected, some which I have already provided to OPR/IAD over the past 2 years, Capt. Goodson has a history of lying. The major issue is that only 1 truth can exist. Either Capt. Goodson lied during the investigation and perjured himself under oath during the PBI, or Goodson's story, which implies that a commander or Corporal of OPR/IAD, listed above, leaked a document out of their unit.

If Capt. Goodson's testimony is correct, as far as I understood his testimony, that if he never saw the document before, then my corruption allegation to OPR/IAD was leaked by a high-ranking commander of Internal Affairs or the intake Corporal and then somehow transported to the Central Divisions Inspectors Office. For obvious reasons I am highly alarmed. Since this document was found in a desk drawer, I have faced multiple sets of 18's[10]. Two of these 18's are for lying during the course of an investigation when Insp Gillespie found that a quote I stated in my memo was refuted by Capt. Goodson. Never mind the physical evidence I was able to provide that my statement was accurate and true, as long as a higher-ranking commander makes an allegation, then they must be correct even without evidence

*I am asking for clarification with regards to my investigation into whistleblower violations; is it normal for an investigator to request discipline for only 1 charge, and then after receiving a request from the accused to meet with a higher authority a 2nd interview be conducted with the explicit intent on pushing lying charges?* Would it be normal for the accused to receive a 2nd interview so that maybe I could givefurther information and clarification? I thought it was customary that the accused be the last person interviewed.

Thank you for your attention on this difficult matter. I look forward to hearing from you soon, because I hope you, like most people, understand magic doesn't exist and documents reporting corruption don't magically end up "found in a desk drawer" followed by evaluations being changed and multiple memos to the PBI pushing for lying charges designed to get a whistleblower dismissed from the department.

It is imperative to note, the timeline in which **I felt it was my duty to forward corruption allegations to OPR/IAD took place relatively soon after the fallout of the 22nd District**

---

[10] 18's refers to disciplinary actions Plaintiff has received.

12

**losing its previous commander, Capt. Akil and his administrative staff, over other forms of corruption and allegations of theft of time**."

emphasis added

53.     Despite Plaintiff's repeated complaints for over a year, he continues to receive retaliatory treatment, and has all but been told that he is going to be terminated "any day."

54.     Thus, Plaintiff alleges that due to his protected concerns and complaints about public affairs, illegal practices, departmental illegality, and unethical actions within the Philadelphia Police Department, he has been continuously retaliated against, is in fear of his termination and detrimental career-ending treatment.

**Count I**
**Violations of 42 U.S.C. § 1983**
**(First Amendment Retaliation)**
**- Against Defendants Gillespie and Woodson only -**

55.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full. This claim is pursued through 42 U.S.C. § 1983 for violations of the United States Constitution.

56.     Plaintiff voiced many concerns and complaints about public affairs, illegal practices, departmental illegality, theft, waste, police misconduct, investigation falsification, and unethical actions within the Philadelphia Police Department.

57.     Hostility to a government worker exercising his right to free speech on a matter of public concern, such as corruption in the local police force, serves to chill free expression and perpetuate cycles of oppression and inefficiency[11].

---

[11] *Latessa v. New Jersey Racing Comm'n*, 113 F.3d 1313, 1319 (3d Cir. 1997) (setting out the balancing test for speech by a government worker as between the public interest in favoring expression and the possible injury speech could cause to the efficiency of public services);

58.     Plaintiff has experienced multiple forms of retaliation and all adverse actions as outlined in this Complaint as a result of exercising his constitutional right to freedom of speech under the 1st Amendment of the United States Constitution.  *See e.g. Montone v. City of Jersey City*, 709 F.3d 181, 195 (3d Cir. 2013)(a police officer may proceed to trial on First Amendment Retaliation Claims where retaliated against for exercising his right to freedom of speech).

59.     The adverse actions for which Plaintiff seeks relief in this lawsuit include but are not limited to:

    (1)  Discipline;

    (2)  Non-promotion;

    (3)  Transfers, negative changes in employment terms, or other changes in employment conditions;

    (4)  Hostile Work Environment;

    (5)  Suspensions;

    (6)  Permanent career impairment through knowingly false allegations and claims; and

    (7)  Plaintiff's impending suspensions and terminations, which are pending.

60.     Plaintiff was retaliated against, continues to be retaliated against, and is in fear of retaliatory termination for reporting concerns and complaints about public affairs, illegal practices, departmental illegality, and unethical actions within the Philadelphia Police Department, and as such, has suffered damages.

**Count II**
**Violations of the Pennsylvania Whistleblower Act ("PWA")**
**43 Pa. C.S.A. §§ 1421-1431 *et seq.***
**(Retaliation)**
**- Against Defendant City Only -**

14

61.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62.    The PWA makes it unlawful for an employer to:

> threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority . . . an instance of waste by any other employer as defined in this act.

63.    Defendant City is an "employer" for purposes of the PWA, as it receives public funds receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body.[12]

64.    While working for Defendant City, Plaintiff reported several instances about public affairs, illegal practices, departmental illegality, waste, fraud, and unethical actions within the Philadelphia Police Department.

---

[12] *See Gratz v. Ruggiero*, No. CV 16-3799, 2017 U.S. Dist. LEXIS 76333, 2017 WL 2215267 (E.D. Pa. May 19, 2017) explaining:

> [T]he Pennsylvania Whistleblower Law was amended in 2014 to expand the Law's coverage. *See* 2014 Pa. Legis. Serv. Act 2014-87 (Purdon's). To that end, the legislature amended the definition of employer to include not only public bodies, but also individuals, partnerships, associations, and both profit and not-for-profit corporations that "receive money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body." 43 Pa. Stat. Ann. § 1422 (2014). Moreover, the legislative history makes clear that very purpose of the amendment was to "expand coverage of the law to include employees of companies that are performing services for public bodies with public monies." Brian L Ellis, Pa. H.R. Co-Sponsorship Memoranda, H. Bill 105 (Jan. 11, 2013); *see also* Pa. H.R. Comm. on Appropriations Fiscal Note, H. Bill 118, Printer's No. 242 (Feb. 4, 2013)

15

65.    Plaintiff was retaliated against, continues to be retaliated against, and is in fear of retaliatory termination for reporting concerns and complaints about public affairs, illegal practices, departmental illegality, and unethical actions within the Philadelphia Police Department

66.    The adverse actions for which Plaintiff seeks relief in this lawsuit include but are not limited to:

(1) Discipline;

(2) Non-promotion;

(3) Transfers, negative changes in employment terms, or other changes in employment conditions;

(4) Hostile Work Environment;

(5) Suspensions;

(6) Permanent career impairment through knowingly false allegations and claims; and

(7) Plaintiff's impending suspensions and terminations, which are pending.

67.    As a consequence of Defendant City's violations of the PWA, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to be prohibited from continuing to maintain their illegal policies, practices, or customs of improperly paying and retaliating against employees and are to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded punitive damages against the individual defendants, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish such Defendants for their willful, deliberate, malicious and outrageous conduct and to deter other individual Defendants or other employers from engaging in such misconduct in the future. This damage request applies only to the extent legally applicable as to the entities or individuals set forth in this lawsuit (as each of the individuals herein are being sued in their individual capacities);

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering, discipline and/or file expungement, change in policies, and all other equitable relief potentially available);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: 

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: June 12, 2026

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

Jeffrey Deacon                                    :                    CIVIL ACTION
                                                  :
                    v.                            :
                                                  :
City of Philadelphia, et al.                      :                    NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                             (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                                       (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)                                                                         (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (x )

6/12/2026                                                                      Plaintiff
_____        _____        _____
**Date**                   **Attorney-at-law**                **Attorney for**

215-639-0801                    215-639-4970                      akarpf@karpf-law.com
_____        _____        _____
**Telephone**              **FAX Number**                     **E-Mail Address**

**(Civ. 660) 10/02**

10/2024

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.     Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A. *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

B. *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

DEACON, JEFFREY

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

**DEFENDANTS**

CITY OF PHILADELPHIA, ET AL.

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**              **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane    [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | Liability    [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &    Pharmaceutical | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| & Enforcement of Judgment | Slander    Personal Injury | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 835 Patent – Abbreviated | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted | Liability    [ ] 368 Asbestos Personal | | New Drug Application | [ ] 470 Racketeer Influenced and |
| Student Loans | [ ] 340 Marine    Injury Product | | [ ] 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | [ ] 345 Marine Product    Liability | | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment | Liability    **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | [ ] 350 Motor Vehicle    [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | | [ ] 485 Telephone Consumer |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle    [ ] 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| [ ] 190 Other Contract | Product Liability    [ ] 380 Other Personal | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal    Property Damage | Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| [ ] 196 Franchise | Injury    [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | [ ] 362 Personal Injury -    Product Liability | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights    **Habeas Corpus:** | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 441 Voting    [ ] 463 Alien Detainee | Income Security Act | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment    [ ] 510 Motions to Vacate | | or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/    Sentence | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 245 Tort Product Liability | Accommodations    [ ] 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -    [ ] 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | mployment    **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of |
| | [ ] 446 Amer. w/Disabilities -    [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | State Statutes |
| | Other    [ ] 550 Civil Rights | Actions | | |
| | [ ] 448 Education    [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42USC1983 (First Amendment Retaliation)

Brief description of cause:
Violations of 42USC1983 and PA Whistleblower Act..

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    6/12/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____    AMOUNT  _____    APPLYING IFP  _____    JUDGE  _____    MAG. JUDGE  _____